Grover, J.
To entitle the plaintiffs to go to the jury, the evidence must have been such as to make the questions, whether the injury received by their testator was the result of the negligence of the defendant, and whether he was free from any negligence contributing thereto, proper for their determination. Eo question is made by the counsel for the appellant but that the first was such. The point made relates to the second. Upon this the difference between the counsel is not as to the law respecting the degree of care incumbent upon the testator to protect himself from injury in crossing the defendant’s track, but in its application to the testimony given in the case. The law required of the testator the exercise of such a degree of care as prudent persons, knowing the *402 danger to be encountered and attentive to their safety, would take to shield themselves from injury therefrom, it is settled that this requires a vigilant use of the eyes in looking, and of the ears in listening, upon approaching a highway crossing, to ascertain whether there is a train approaching, and that if by the vigilant use of these faculties, while approaching the crossing, the vicinity of such a train may be discovered by the traveler in time to avoid a collision therewith, the omission so to exercise them, and thus avoid an injury, is such negligence as will bar a recovery therefor, although the railroad company may have been guilty of negligence contributing thereto. It is likewise settled that, if the evidence is such that it would be the duty of the court to set aside a verdict finding the traveler free from negligence, as against evidence, it is error to deny a motion for a nonsuit. The present case requires a further remark. The law requires of the traveler the exercise of this care while approaching the crossing. It does not require him to stop for the purpose of listening. If with a team, it does not require that he should get out of the vehicle in which he is riding, leave his team, and go to the track for the purpose of looking, or to rise up in his vehicle, and go upon the track in a standing position, to enable him to obtain a better view of the track. This would be requiring extraordinary care, such as is rarely, if ever, exercised by the most prudent. In applying the law to the present case, the inquiry is whether a verdict finding that the testator could not by this use of his eyes and .ears, while approaching the crossing, have discovered the .train, by a collision with which he was killed, in time to have avoided it, should have been set aside by .the court as against the evidence. If it should, the monsuit" was right, and the order of the General Term -setting it aside should be reversed; but, if not, the order of .that court was right, and should be affirmed. An examination of the case shows that the testator approached the crossing upon a road crossing the track at an angle of forty-five .degrees, with a slight wind blowing from him toward the *403 approaching cars; that the train approached the crossing from the east, running through a cut. The testimony shows that these and some other circumstances prevented the hearing of the noise made by the train, and rendered it highly probable that the testator, if attentive and listening for the sound, could not have heard it while riding in his wagon, which he was driving upon a slow trot or walk until he got upon or so near the track as to prevent him from extricating himself from the danger. Against this there was nothing in conflict except the fact that the noise made by a train while running at the rate of speed of the one in question, can usually be heard at considerable distance. The injury occurred in August. The plaintiff introduced witnesses who testified that at this time the view of the track, upon which the train was approaching the crossing, was obscured from the road upon which the plaintiff’s testator was approaching, by corn growing upon the land adjacent to the road. The foliage in an orchard, rank weeds upon the banks of the land of the defendant, in addition to the fences, the cutting for the track, and the hilly surface in the vicinity of the crossing; and that, in fact, a train could not be seen by one approaching the crossing, as the testator did, until his horses were nearly upon the track. In answer to this, the defendant proved, by a large number of witnesses, that in February they went there and examined for the purpose of determining how far a train could be seen by a person approaching the crossing sitting in a wagon; and that when the person so sitting was about thirty feet from the crossing, he could see the train eight or nine rods from the crossing; and that the distance at which it could so be seen, rapidly increased upon going nearer to the railroad track. At this time there was no growing corn, .foliage or weeds growing there to obscure the view; consequently, this testimony did not establish that a train could be so seen in August, while such obstruction to the view existed. It did not show that in August the testator could, by looking, have seen the train in time to have avoided the collision. It could not, therefore, be held as a question of *404 law that his failure sooner to discover the train was the result of his inattention to the danger of his situation, or of Ms failure to use Ms senses to guard against it. These questions upon the evidence should have been submitted to the jury. There was no pretense of any negligence of the testator after Ms discovery of the train. It was so near, and runmng at such speed, that the collision occurred almost immediately thereafter.
The order of the General Term directing a new trial must be affirmed, and judgment given for the plaintiff upon the stipulation.
All concur.
Judgment affirmed.