INGERSOLL v. NEW YORK CENTRAL AND HUDSON RIVER RAIL-
ROAD COMPANY.

*Negligence — contributory, in approaching railroad crossing.*

Plaintiff's intestate, who, with his horses and wagon, was approaching a railroad
crossing, was prevented from seeing a coming train, by some freight cars
which stood upon a switch track near the crossing, until it was too late for
him to avoid a collision with such train, whereby he was killed. A moment
previous a freight train had passed, and was not out of hearing. *Held*, that
the intestate was not guilty of contributory negligence in not seeing or
hearing the coming train.

APPEAL by plaintiff from an order at the special term granting a new trial after a verdict for the plaintiff.

The action was brought by Leah J. Ingersoll, as administratrix, etc., of John Ingersoll, deceased, to recover damages caused by the defendant running over and killing plaintiff's intestate, negligently. The answer set up a special denial and contributory negligence on the part of intestate. The facts were these :

On the 4th of July, 1873, plaintiff's intestate was, while driving two horses attached to a wagon loaded with lumber southerly

across the East street crossing of defendant's railroad in the village of Fonda, run into and killed by a passenger train coming from the east. At the place where the accident occurred, there were standing on a switch track belonging to defendants a number of freight and box hay cars, which would cut off from the view of the deceased any train approaching from the east until he should have reached the track upon which such train was coming. At the time deceased was approaching the crossing, a freight train was passing on another track in a direction opposite from that of the passenger train, and at the time of the accident was not out of hearing. Sufficient other material facts appear in the opinion.

*W. L. Van Denbergh,* for appellant.

*S. W. Jackson,* for respondent, cited *Wilcox* v. *R. W. & O. R. R. Co.,* 39 N. Y. 358 ; *Gorton* v. *Erie Railway Co.,* 45 id. 664 ; *Baxter* v. *T. & B. R. R. Co.,* 41 id. 503 ; *Davis* v. *N. Y. C. & H. R. R. R. Co.,* 47 id. 402 ; *Gonzales* v. *N. Y. & H. R. R. Co.,* 38 id. 442 ; *Grippen* v. *N. Y. C. R. R. Co.,* 40 id. 51 ; *Beisiegel* v. *N. Y. C. R. R. Co.,* id. 22 ; *Ernst* v. *H. R. R. R. Co.,* 39 id. 68.

Present — LEARNED, P. J., and BOARDMAN, J.

BOARDMAN, J. The Court of Appeals have established, by its decisions, that ordinary prudence requires every person approaching a railroad crossing to use both his eyes and his ears to discover any approaching train ; that a failure to use the senses of hearing and seeing, where either would detect the danger in time to avoid it, or the seeing or hearing the approaching train and disregarding it, is such contributory negligence as will prevent a recovery for injury or death caused by such train, even though the train was negligently and carelessly run. It is also established that the absence of contributory negligence is an affirmative fact that must be proved by the plaintiff as a condition of recovery.

When the plaintiff is the representative of a deceased person killed by the alleged negligence of the railroad company, and no evidence can be given of the use made by the deceased of his eyes and ears, the law will assume that he was negligent if the evidence shows that he could have seen or heard the approaching train by a vigilant use of his senses, in time to have avoided it. *Davis* v. *N. Y. C. & H. R. R. R. Co.,* 47 N. Y. 400 ; *Wilcox* v. *R. W. & O.*

·R. R. Co., 39 id. 358 ; *Reynolds* v. *N. Y. C. R. R. Co.*, MSS., Court of Appeals, 1874.

The learned judge who tried this case felt bound in deference to these authorities to hold that plaintiff's intestate was guilty of negligence in not seeing or hearing the approaching train in time to have avoided it. He, therefore, set aside the verdict obtained by the plaintiff. That decision is here for review.

Was the plaintiff's intestate guilty of negligence in not seeing the approaching train? The evidence, taken together, shows that a number of cattle cars were standing upon the switch track between the highway, on which the deceased was approaching the crossing, and the approaching passenger train. These cars on the switch track were so situated as to obstruct the view toward such train, The deceased could not see it from his wagon as he approached. Gardinier testifies : "From the turnpike down to the railroad I don't think anyone upon a wagon could see an approaching train because the cars on this branch track were in the way." Again he says: "The extreme west end of the cars on switch stood between six and eight feet from the plank where he, deceased, was crossing; hay cars are about one foot higher than common box cars; they are about thirteen feet high; they were all box cars that I saw." Johnson testifies to the same thing. Cross says: "A hay car is forty-one feet long; if there had been no cars there he could have seen down the track two hundred and seventy-five feet; these cars would entirely obstruct the view of the railroad to one driving down to the track from the turnpike." Van Antwerp says, at thirty feet from railroad "you can see the engine, that is all, provided there are no cars standing in the way." Haggart says, the car on the switch "was across the sidewalk and up to within five feet of where they drive across." Again, after stating that he could see "the smoke of the train" from the highway when cars stood on this switch track, he adds: "You could not see it after you got down near the railroad; those cars would prevent you doing so; * * * there were three of the high cars connected together, and there were more east of them." Dormady, the engineer, speaking of the horses, says: "The first I saw of them was when they came south of the south line of the standing cars on the branch." Again, "I have no doubt these cars prevented me from seeing him and him from seeing me until he got on the track." Gardinier says: "He, deceased, might have seen the train, perhaps, through the open car

door; I did not discover any other means by which he could see it." He adds that he thought, from the actions of deceased, that he either saw or heard the train.

With such evidence in the case I do not see how plaintiff's intestate can be charged with negligence in not seeing the train in time to avoid it. These hay cars were placed upon the switch track by the defendant's agents, and were crowded into the highway so as to obstruct the sight of the coming train until too late to avoid it.

Was the deceased guilty of negligence in not hearing the approaching train? Whether a bell upon this train was rung or not was a subject of controversy upon the trial. It also appears that a freight train had just passed when the passenger train struck deceased. Wilson testifies: "I would not be likely to hear it—the bell—with a freight train passing between it and me." The deceased was upon a loaded wagon which must have made some noise. The freight train was still in his hearing. The standing cars may have affected the sound of the approaching train so as to deceive him. Against these intrinsic probabilities, arising from the evidence, we have only the testimony of Gardinier, that he thought deceased either heard the cars or saw them in some shape just as he was crossing the switch. His reason for this opinion was; that deceased struck at his horses with something at that moment. Besides this we have no evidence of consequence touching the possibility of hearing the train. With all respect for the learned judge who granted this order for a new trial, and conscious of the better opportunity he had of considering the testimony produced before him on the trial, I am yet compelled to think the evidence made it a question for the jury, and its decision thereon was conclusive.

The noise made by his wagon is recognized as a circumstance tending to excuse deceased in *Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 403. So, also, were the noise of a steam saw-mill (*Mackey* v. *N. Y. C. R. R. Co.*, 35 id. 78), and the sound of falling waters (*Richardson* v. *N. Y. C. R. R. Co.*, 45 id. 849), recognized as excuses to be considered by the jury for a failure to hear the approaching train or the bell. Upon the same principle the rumble of the receding freight train was a fact tending to deceive the deceased, and throw him off his guard.

These considerations lead to the conclusion that an error was committed in granting the new trial. The order is, therefore, reversed, and the motion for a new trial denied, with costs.

*Ordered accordingly.*