By the Court.—Curtis, Ch. J.
Though the court of appeals have held that every person approaching a railroad crossing should use both eyes and ears to discover any approaching train, there may be circumstances where the most vigilant use of these organs will fail to warn and protect.
The evidence in the present case shows that the plaintiff could not, in consequence of embankments and obstructions, see up or down the track, until he stepped on to it, between two and three feet from the west end of the bridge. There was no opportunity for him to look until he emerged from between the ob *231 structions on to the track, and as he was in the act of so stepping forward, looking before him, he was struck and thrown into the excavation. hFo exercise of prudence would have enabled him to have looked up and down the track. In looking forward, as he stepped forward, he exercised such care as a prudent man ordinarily would exercise under these circumstances. To have looked into the embankments to the right and to the left as he stepped from the passage-way between them on to the track, would have been useless and imprudent.
The testimony also shows that the train of cars that was coming in from the north at that time, was a very long one, and made a very loud noise, and though there is no evidence that a bell was rung on the defendant’s train, the proof strongly tends to show, that even if it had been rung, the plaintiff could not have heard it. The law in a case like this does not charge a person with contributory negligence, where the surrounding and external circumstances are such that the senses of sight and hearing cannot be exercised. There are many instances in which these circumstances, as for example, the noise caused by a wagon, or by a steam saw-mill, or by falling waters, or by another train, have been recognized by the courts as a sufficient excuse for not hearing an approaching train (Davis v. N. Y. C. & H. R. R. R. Co., 47 N. Y. 403 ; Richardson v. Same, 45 Id. 849 ; Ingersoll v. Same, 6 N. Y. Supreme Court [T. & C] 416).
In the recent case in the court of appeals of Weber v. N. R. C. & H. R. R. R. Co. (N. Y. Weekly Dig. 472), it is held that the law requires, in cases like the present, the exercise of such a degree of care as prudent persons knowing the danger to be encountered and giving attention to their safety would use to shield themselves from danger therefrom, and that the questions whether a person crossing a track is negligent in *232 not looking or listening while he is on the crossing, and whether he could have stopped in time to avoid the danger, are questions for the jury. The case of Schattler v. Gardiner, 47 N. Y. 402, is cited in the opinion in support of this ruling. In this latter case, where there were also obstructions to seeing and hearing, Grover, J., says: “ These questions upon the evidence should have been submitted to the jury.” The doctrine, that these questions of negligence in this class of cases, where the conduct of the plaintiff is mixed with and dependent upon the acts of the defendant and the surrounding circumstances, in most cases fairly belong to the jury in its general consideration of the whole facts of the case, is sustained in Borst v. L. S. & M. S. R. Co., 4 Hun, 349, affirmed by court of appeals, June, 1878. The same was also held in Thurber v. Harlem B. & F. R. R. Co., 60 N. Y 331. In a case similar to the present, it was held that the evidence of obstructions to the sight and hearing of the approaching traveler at the crossing, made his alleged negligence a question for the jury and their decision upon it final (Ingersoll v. N. Y. C. & H. R. R. R. Co., 6 N. Y. Supreme Ct. 419).
The effect of these decisions is not wholly in accordance with the rulings in Sutherland v. N. Y. C. & H. R. R. Co., 40 N. Y. Superior Ct. (9 J. & S. 17), which the defendant cites to sustain the dismissal of the complaint in the case under consideration.
In addition to these obstructions to sight and hearing, as bearing upon the question of the plaintiffs negligence, there were other facts shown on the trial of the case, which were also proper to go to the jury in its general consideration of the whole facts.
The evidence,shows, that the defendant was running its train at the intersection of the Fourth avenue and Fifty-seventh street, two thoroughfares in the heart of a great city, at a rate of speed that threw the plaintiff thirty feet when he was struck by it; and the witness *233 Bessiga, who resided in the immediate vicinity, testified “ There were a great many accidents occurred there every day, and I don’t know whether I saw this particular one.” It also appears .that the plaintiff crossed there almost daily, and must have been conversant with the tracks and the service signals of the road, and that he was watchful and obeyed the danger signal of the flagman, when signalled to stop, and proceeded on when the signal was lowered, after the train from the north passed. All these facts tend to enlighten the minds of the jury in passing upon the questions of negligence, which in this case are pure questions of fact.
It is true, the defendant insists that it is not shown, that it was their flagman, or their road, but it admits that the train was operated by it, which inflicted the injuries upon the plaintiff.
There is no good reason why a railroad company,, operating trains upon a road owned by another company, should not be liable for negligence in running its trains. The exigencies of the protection of the public require that it should be amenable to the same laws and regulations that bind the owner, and the-courts have so held (McGrath v. N. Y. C. & H. R. R. R. Co., 63 N. Y. 522).
If the defendant operated this train on a road belonging to another company, and subject to the protection and signalling of this flagman, both as respects itself and the public at this crossing, it should be responsible for his negligence, for the same reason that it is protected by his care from liability, when persons cross the track, negligently disregarding his signals.
When various companies run trains over the same road in a large city intersected by the crossings of streets, the protection of citizens in the use of the streets should not depend upon inquiries to be made of the signalling flagmen of the road, as to which company- *234 employs them, or whether they are duly authorized to signal danger or safety as this or that train passes. It must be assumed in such exigencies, that when a company chooses to run trains over a road guarded by flagmen, that it elects to be protected by these flagmen properly discharging their duties, and to be made liable in case they neglect them. No conflicting view would be consistent with safety, either to themselves or the public. The law does not give immunity from liability to a company operating its trains negligently, because it appears that it operates them upon a road and with a signal service that belongs to another company. As far as the person inj ured in passing over the crossing by such company’s train is concerned, it is imm aterial to whom the road or its signal service or its other appurtenances belong that are in use at that crossing. The duty primarily devolves upon the company running the train, that there shall be no negligence in respects to these matters as far as persons crossing are affected (Michigan Central v. Kanouse, 39 Ill. 272; Clemont v. Canfield, 28 Verm. 302 ; Wyman v. P. & K. R., 46 Maine, 162; Webb v. Same, 56 Maine, 117). It is apparent that without having a flagman at this intersection in question, the defendant was guilty of negligence in running a train at the rate of spefed this was run, which struck the plaintiff, and. even with a flagman it is questionable if the defendant was justified in running it at so high a rate of speed in a locality, when this class of accidents was of such frequent occurrence.
In Borst v. Lake S. & M. S. R. Co. (4 Hun, 349), it is held, that when a person waiting for an opportunity to -cross the track is signalled by a flagman stationed at the crossing, he has a right to rely on the flagman, and to suppose that he has performed his duty.
The evidence on the part of the plaintiff was sufficient to warrant the submission of the case to the jury, *235 and the order appealed from dismissing the complaint should be reversed, and a new trial granted with costs to abide the event.
Sanford, J., concurred.