GRACE RICHEY ET AL., Respondents, *v.* MISSOURI PACIFIC
RAILROAD COMPANY, Appellant.

April 29, 1879.

1. Where a train of cars and a wagon collide at a railroad-crossing, at which,
   owing to a high bank and a curve in the road, the locomotive could not be
   seen or heard by the driver of the wagon until within ten seconds in time
   and three hundred feet in distance, the jury are not bound to infer from
   the presence of the wagon on the track at the time of the collision that
   the driver did not, in the absence of the usual signal by the bell, use
   proper care.
2. In such a case, negligence will not be presumed on either side; and where the
   driver is killed by the collision, the plaintiff is not bound to establish
   affirmatively, by the evidence of eye-witnesses, that the deceased did not
   by his negligence contribute to the injury.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

CLINE, JAMISON & DAY, with T. J. PORTIS, for appellant:
The court erred in permitting the case to go to the jury.
There was no evidence fit or proper to be submitted to them
for their consideration. — *Harlan* v. *Railroad Co.*, 64 Mo.
480; 65 Mo. 22; *Fletcher* v. *Railroad Co.*, 64 Mo. 484;
*Maher* v. *Railroad Co.*, 46 Mo. 267; *Gorton* v. *Railway
Co.*, 45 N. Y. 662; *Railroad Co.* v. *Rathgel*, 32 Ohio St.
66; *Havens* v. *Railroad Co.*, 41 N. Y. 296; *Railroad Co.*
v. *Loomis*, 13 Ill. 549; Whart. on Neg., sect. 384; Shear.
& Redf. on Neg., sects. 488, 488 *a*; *Railroad Co.* v. *Harlam*,
4 Vroom, 149; 33 N. Y. 147; *Runyan* v. *Railroad Co.*, 1
Dutch. 357; *Railroad Co.* v. *Gretzner*, 46 Ill. 74; *Railroad
Co.* v. *Still*, 19 Ill. 508; *Railroad Co.* v. *Houston*, 95 Otto,
697.

W. B. THOMPSON, for respondents: The question of neg-
ligence was properly submitted to the jury. — Redf. on Rys.
393; *Kennedy* v. *Railroad Co.*, 36 Mo. 364; *Staed* v. *Con-
tinental Imp. Co.*, 95 U. S. 161. The legal presumption is
that the driver stopped and listened before crossing the

railroad. — *Railroad Co.* v. *Weber*, 76 Pa. St. 157 ; *Railroad Co.* v. *Weiss*, 79 Pa. St. 387.

BAKEWELL, J., delivered the opinion of the court.

This is an action, under the statute, by the surviving children of William F. Richey and Dora, his wife, for damages on account of the negligent act of the defendant in running over and killing the parents of the plaintiffs, on August 28, 1877. The answer is a general denial, and an allegation of contributory negligence on the part of the deceased. There was a verdict and judgment for the plaintiffs, and the defendant appeals.

The accident happened at the crossing of the Big Bend Road, between Sutton and Laclede Stations, about eight miles from the main depot of the road in St. Louis. The Big Bend Road is a public road, fifty feet wide, macadamized for twenty feet in the centre, running north and south, and crossing the railroad track at right angles. East of the Big Bend Road there is a curve in the railroad track, and between the railroad and the highway is a bank of earth twelve feet high, which slopes down to the intersection of the road and the track, at which point it is four feet high. This hill is covered with timber, brush, and high weeds. One sitting in a wagon in the middle of the track can see east along the railway about five hundred feet ; sitting in a wagon north of the track, with his horse on the track, he could see a locomotive in the same direction about four hundred feet off ; sitting in the wagon with his horse's head on the track, he would be able to see a locomotive at a distance of about two hundred and fifty feet. Owing to the hill, the curve, and the timber, the whistle of a locomotive and the noise of an approaching train would not be heard in ordinary weather, by one listening at the crossing, for a distance of more than three hundred yards. If the wind was blowing freshly against the advancing train, it could hardly be heard by one at the crossing until it came in sight. The Big Bend

Road is a down-grade south to the track, and the track is a down grade west towards the road. The wind was from the west at the time of the accident.

The last that was seen of William F. Richey alive, he was driving home in a covered wagon, containing his wife and his two little children, the plaintiffs in this case. At about fifteen minutes after five, he was seen driving at a slow trot down the declivity of the Big Bend Road leading south to the railroad track, and at a distance of two hundred and fifty yards from the track. He was sober, a man of good habits, who had once been a brakeman on the road, and who was in the habit of going to St. Louis both by rail and in a wagon, and was familiar with the crossing, and knew when trains might be expected. There is some evidence that the passenger-train coming from the east was somewhat behind time, and that a freight-train was heard to whistle at the time when the passenger-train might be expected. The train from St. Louis came with unusual speed round the curve; it was running about twenty-five miles an hour; it struck Richey's wagon between the fore wheels and the horses. He was instantly killed; his wife and children were found in a mangled condition on the cow-catcher. Mrs. Richey died in a few minutes. The children were badly hurt. The testimony is conflicting as to whether the whistle was sounded or the bell rung for the crossing. There is testimony tending to show that no bell was rung, and that the only whistle was the alarm-whistle when the wagon came in sight, as the train rounded the curve and the collision was inevitable.

The appellant claims that the case should have been taken from the jury; that the mere fact, unexplained, that the wagon of Richey was on the rails at the time of the accident, is conclusive as to such contributory negligence as precludes a recovery. Upon this contention the appellant rests his case; and, indeed, it is manifest that unless he is right in this, the judgment ought not to be disturbed.

There was some evidence of negligence on the part of the defendant directly contributing to the accident. The instructions were warranted by the evidence, and cannot be complained of, unless on the theory that the evidence was conclusive as to contributory negligence ; and no material error seems to have been committed to the prejudice of the appellant in the admission or exclusion of evidence.

Does the presence of the deceased on the track at the date of the accident, under the circumstances detailed, make out such a *prima facie* case of negligence that, without proof of something to justify it, the jury were bound to find for the defendant? That is the only question for our consideration. We do not think that it does. The crossing was an extraordinarily dangerous one, and the deceased was bound, therefore, to use extraordinary care. The fact that he had advanced so far that his fore-wheel was on the rails at the time of the collision, does not show that he did not use all the care required. What would the utmost care require? It does not appear that he could do more than stop and listen as he came within a few feet of the track. If he stopped to listen when the heads of his horses were within twenty feet from the rails, he himself would be about thirty or thirty-five feet from the centre of the track. In that position he could see about three or four hundred feet east, or to a point a little beyond the frog of Sutton's switch, which was parallel with and on the south or opposite side of the main track, and on which a freight-train was standing. His horses were slow and gentle farm-horses ; the wind was fresh against the advancing train. If there was no whistle and no bell, there is testimony that in this position he could hear nothing, though he listened, until the train was within three hundred yards. Hearing and seeing nothing, he would speak to his horses, and the noise of his own wheels on the macadam would prevent his hearing anything until the head of the locomotive could be seen coming round the curve, at a

distance of one hundred yards in space and only ten sec-
onds in time, the train running over twenty-five miles an
hour. In such a position, no care could have insured
safety. It would be too late to turn, too late to back, and
too late to cross ; and whatever course the driver of a pair
of plough-horses in a farm-wagon might adopt in such a
case, would be dictated by the impulse of the moment,
rather than by reason. If he was not to blame for his con-
duct up to the moment when the train was within one hun-
dred yards of him, and his horses almost at the rails, he
could not be considered guilty of contributory negligence
if, after that, he did not escape. The inevitable inference
is that from that moment the husband and father did his
best to escape the horrible destruction that was thundering
down upon him and his. If he was not to blame for the
position in which he found himself, he is not to be blamed
if in that critical moment he did not use the best possible
method of escape which calm reason would suggest ; for
there was hardly time for reason to act at all.

There is nothing in the case, therefore, from which the
jury were bound to infer that the deceased drove on the
track without looking to the right or left ; or that he did
not stop to listen before driving on to the right of way of the
road ; nor that without signals he might, with care, have
heard the train. The doctrine of the cases cited by the ap-
pellant is not in contradiction with the doctrine recognized
by this court in *Leduke* v. *Railroad Company*, and other
cases. Negligence of the defendant would be no excuse for
negligence of the deceased ; and if his position on the track
was fairly to be explained only on the theory that he
drove across the track without looking and without listen-
ing, the case should not have been permitted to go to the
jury. But the peculiar physics of this case remove it from
the class of those cases where pedestrians have stepped in
front of a locomotive without using their eyes and ears, or
where drivers have attempted to cross a track within sight

and hearing of an approaching train. There is no evidence from which the jury must conclude, in the present case, that the driver was trying any dangerous experiment, or that he was not using the precautions which would be taken by an ordinarily competent and prudent man at such a crossing. The plaintiffs, who affirm negligence against the company, introduced evidence from which that negligence, directly contributing to the injury, might fairly be inferred. The defendant, who affirmed negligence against the deceased, did not introduce evidence, nor was evidence introduced, from which the jury were fairly bound to infer contributory negligence of the deceased. Under such a state of facts, it would have been error to take the case from the jury. The jury were authorized to find affirmatively that the deceased was free from negligence contributing to his death.

One of the cases cited by the appellant is singularly like the one before us in its main features. It is that of *Davis* v. *Railroad Company*, 47 N. Y. 400. In that case, a nonsuit was granted in the trial court on the ground of contributory negligence, a new trial was granted in General Term, and the Court of Appeals entered judgment for the plaintiff upon a stipulation. The court, after remarking that the law in such a case requires of the plaintiff a vigilant use of his ears and eyes, say : "It does not require him to stop for the purpose of listening. If with a team, it does not require that he should get out of the vehicle and go upon the track, to enable him to have a better view. This would be such extraordinary care as is seldom exercised by the most prudent. In applying the law to the present case, the inquiry is whether a verdict finding that testator could not by this use of his eyes and ears, while approaching the crossing, have discovered the train in time to have avoided it, should have been set aside as against the evidence. If it should, the nonsuit was right.

"An examination shows that he approached the crossing

upon a road crossing the track at an angle of forty-five degrees with a slight wind blowing from him toward the approaching cars; that the train approached the crossing from the east, running through a cut. The testimony shows that these and some other circumstances prevented the hearing of the noise made by the train, and made it highly probable that the testator, if attentive and listening for the sound, could not have heard it while riding in his wagon, which he was driving at a slow trot, until he got upon or so near the track as to prevent him from extricating himself from the danger. Against this there was nothing in conflict except the fact that the noise made by a train while running at the speed of the one in question can usually be heard at a considerable distance. The injury occurred in August. Plaintiff's witnesses testified that the view of the track at the crossing was obscured from the road from which the plaintiff's testator was approaching, by corn growing on the land adjacent to the road, the foliage in an orchard, rank weeds upon the banks of the defendant's land, in addition to the fences, the cutting of the track, and the hilly surface in the vicinity of the crossing; and that, in fact, a train could not be seen by one approaching the crossing as the testator did, until his horses were nearly upon the track. In answer to this, the defendant proved by a large number of witnesses that in February they went there and examined, for the purpose of determining how far a train could be seen by a person approaching the crossing sitting in a wagon; and that when the person so sitting was about thirty feet from the crossing, he could see the train eight or nine rods from the crossing, and that the distance at which it could be seen rapidly increased upon going nearer to the track. At this time there was no corn, weeds, or foliage; this testimony did not establish that a train could be so seen in August. It did not show that in August the testator could, by looking, have seen the train in time to have avoided the collision. It could not, therefore, be held as a question of

law that his failure sooner to discover the train was a result of his inattention to the danger, or failure to use his senses to guard against it. These questions, upon the evidence, should have been submitted to the jury. There was no pretence of negligence after the discovery of the train. It was so near, and running at such speed, that the collision occurred almost immediately afterwards."

In *Wilds* v. *Railroad Company*, 24 N. Y. 431, cited by the appellant, the Supreme Court was reversed, and it was held that a nonsuit should have been granted. But the court say that there was an utter failure of evidence of negligence on the part of the company, and that the plaintiff was negligent in disregarding signals, and approaching a dangerous crossing at such speed that he could not stop before getting on the track. The rule is laid down, that, " to carry a case to the jury, the evidence on the part of the plaintiff must be such as, if believed, would authorize them to find that the injury was occasioned solely by the negligence of the defendant." This rule might be applied to the case at bar without any danger to the respondents. The New York case, however, holds, contrary to the rule in Missouri, that it is the duty of the trial-court to nonsuit where a verdict for the plaintiff would be clearly against the weight of evidence, and makes the question of negligence one of law for the court rather than of fact for the jury.

The plaintiffs were not bound to establish affirmatively by the evidence of persons who were eye-witnesses of the actual collision that the deceased did not contribute to the injury by any negligence on his part. The present case is not one of mere conjecture of what may possibly have happened, as is the case cited by counsel for the appellant from the New York reports (*Reynolds* v. *Railroad Co.*, 58 N. Y. 248), of the boy found dead upon a straight, unobstructed track in the country, where the train could be seen and heard for half a mile in either direction. It was suggested that the boy might have slipped; but the court held that

the only fair inference from the facts was contributory negligence, there being no eye-witnesses of what actually occurred.

In the case at bar, each party was going his own road, and each was equally bound to care to avoid collision. Negligence is not to be presumed on either side. "It was a question of fact for the jury, to be submitted to them under all the circumstances, and to be determined by them upon their view of what prudence and skill required." *Kennedy* v. *Railroad Co.*, 36 Mo. 364. There was evidence to support the verdict, and the judgment ought not to be disturbed. With the concurrence of all the judges, the judgment is affirmed.