The opinion of the court was delivered by
Manning, C. J.
Morris Murray was killed by a collision of his-bread-cart, which he was driving, with a train on the Pontehartrain Railroad on September 27,1874, and the plaintiff in the double capacity of his widow, and tutrix of his children, sues for twenty five thousand dollars as damages. The case was tried by a jury who gave ten thousand five hundred dollars, for which sum judgment was rendered.
The train was en route from the lake to its depot, and was passing up Elysian Fields street. The track is perfectly straight, and any one, at the point of collision on that street, can see the train approaching from the lake, which is four miles distant. Elysian Fields street, like Canal, has a middle ground with a street on either side. It is a double street. The Pontehartrain rail-track is on this middle ground. On one of these side streets, the Canal & Claiborne street railway has a track for its horse cars, which runs parrallel with the Pontehartrain track for some distance, but turns abruptly before it reaches Goodc.liildren street, and crosses the Pontehartrain track at a right angle. This crossing is sixty-two feet from Goodehildren street. Id was there the collision occurred.
The railroad train is due at this point at 5.29 A. M. It reached there on that morning punctually. Murray was driving his cart on Elysian Fields street — on that side street, whereon the Canal & Claiborne track is laid — and was driving on that track. His route was parrallel with that of the Pontehartrain road. His cart and the train were-going in the same direction. The view from the one to the other was unobstructed by houses or trees — was unobstructed by anything except his cart-cover, which closed in the sides as well as the top, and projected a little in front from the top. His wife was with him in the cart. They left home for the market at 4.40 A. M. by the time of their clock, and reached the crossing in a few minutes, and as they thought they were thus nearly forty minutes ahead of the time for the railway train, *491 were not expecting it. They saw nothing, and heard nothing. As the cart reached the point of crossing, and wheeled horizontally to the railway track, Murray exclaimed, ‘ the steam ears are on us,’ and in an instant the horse plunged and was hurled aside, the cart broken, and Mr. and Mrs. Murray thrown out. He was killed. She was only a little hurt, and the horse not at all.
The railroad time guided the movements of the train, and numerous witnesses attest its correctness.' The train was there at 5.20 on that morning. The clock of the unfortunate man was wrong. The time it marked for him deceived and misled him. He reached the crossing at the moment the train was due, and his life paid the forfeit of his error.
The doctrine of contributory negligence is now imbedded in our jurisprudence, and is recognized and applied in all the States, and by the national courts. It was applied by this court in an early case wherein this company was defendant, Lesseps v. Pontchartrain R. R., 17 La. 361, and has recently been recognized, unimpaired in vigour and completeness. Schwartz v. Crescent City Railroad Co., 30 Annual, 15. The U. S. Supreme court have had occasion lately to consider how far such negligence relieves a railroad company from responsibility where, as in this case, it was urged that the company had omitted the precautions which should have been taken to avoid the collision, and have held that negligence of the company’s employees is no excuse for negligence on the part of the person injured. Chicago & R. I. Railroad Co. v. Houston, 5 Otto, 697.
The city regulations require a slackening of speed to three miles an hour, and ringing the bell, at Good Children street. The defendant’s witnesses say the speed of the train was in conformity to this regulation, and the warning of its approach was duly given. The plaintiff charges that the speed was ‘furious,’ and that the collision is attributable to the negligence of the company in not providing proper equipment of the road, by means of which the train could have been stopped. Proper brakes, and enough men to work them, and ordinary circumspection, she alleges, would have enabled the company’s employees to have stopped the train in time.
Grant all that is contended for in this respect by the plaintiff. The negligence of the deceased contributed to, and was mainly the cause of' the disaster’. It was three-fold. The mistake as to the. hour was occasioned by his implicit reliance on the correctness of his own time piece,, in regulating his starting, but he was made aware of its incorrectness while en route by meeting a horse-car on the Canal & Claiborne road, which does not commence running until 5 o’clock, and the inability to see the train was solely due to the cart-cover, which shut out the view completely. Surely, the defendant is not to be mulcted in damages be *492 cause the deceased had a disordered clock, and drove in a cart which excluded the view from either side ; for it is manifest that if he had known the timo, he must have expected the train at that moment, or if he had not been unable to look without his own vehicle, he must have seen the train approaching. His course was parallel with the train. If he had g me forward sixty-two feet farther, he could have crossed at Good Children street safely, as the train would have shot by, but he was on the liorse-car track of the Claiborne road for his own convenience. It curved sixty-two feet from Good Children street. He chose to pursue that track, instead of keeping on the bed of Elysian Fields street, and turning into the street just ahead of him. He turned out of the public highway (Elysian Fields street), and crossed the middle ground, not through or on another public highway (Good Children street), but over a place which could not be traversed by a vehicle, except by keeping on the horse-car track. He had no right to be where he was, when ne met his death. He took no care nor precaution whatever. Any one crossing a railroad track is bound to use his senses — to look and to listen— before he may prudently venture across, and if the deceased had either looked or listened, he would have seen and heard the approaching train.
No recovery can be had for injuries suffered by one who, without looking carefully along the track of a railroad, walks across or along it, and is run over by a train. Steerman & Redñeld on Negligence, §40. It is culpable negligence to attempt to drive a team across the track of a railraa i in full view of an approaching train, on account of the risk of becoming entangled in the rails, even where there is apparently time to cross. Ibid. §489. It is settled, says the court of New York, that the law requires a vigilant use of eyes in looking, and the ears in hearing, upon approaching a highway crossing, to ascertain whether there is a train approaching, and that if by a vigilant use of these faculties while approaching the crossing, the vicinity of such a train may be discovered in time to avoid a collision therewith, the omission to exercise them, and thus avoid an injury, is such negligence as will bar recovery therefor, although the railroad may have been guilty of negligence contributing thereto. Davis v. Cen. & Har. R. R. 47 N. Y. 402. Aside from the fact of the. accident happening on the defendant’s own property, where the sufferer had no right to be, the failure of the engineer to sound the whistle or ring, the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for his safety. Chicago R. R. v. Houston, 5 Otto, 697. The middle ground of Elysian Fields street, unlike that of Canal and other streets of the same configuration, is the private property of this Railroad Company. It cannot be crossed by vehicles, except where streets cross it, only at the point where the Canal and Claiborne horse-cat track crosses it, and it *493 cannot be crossed there by vehicles except by using the horse-ear track. The deceased seems to have presented a case, in which every element of contributory negligence is furnished by his own conduct.
The jury must have been misled by the charge of the judge, which was erroneous. It was, that if the accident occurred without wanton negligence of the Company, but through simple negligence, the jury was authorized to give exemplary and vindictive damages, but if the accident was unavoidable, and was not the result of the Company’s carelessness or negligence, then only actual damages could be given. We shall set aside the verdict rendered under such instructions.
It is ordered and decreed that the verdict of the jury is set aside, and the judgment rendered thereon is avoiled and reversed, and it is now decreed that there be judgment in favour of the defendant and against the plaintiff upon her demand, and that the defendant recover of the plaintiff its costs in the lower court, and the costs of appeal.
Rehearing refused.